**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **T.T.-1, T.T.-2, and K.T.**

**No. 20-0825** (Cabell County 19-JA-144, 19-JA-145, and 19-JA-146)


**MEMORANDUM DECISION**



Co-petitioners Father D.T., by counsel Randall D. Wall, and Mother A.T., by counsel Sarah Dixon, appeal the Circuit Court of Cabell County's September 22, 2020, order terminating their parental, guardianship, and custodial rights to T.T.-1, T.T.-2, and K.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Allison K. Huson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in terminating their parental, guardianship, and custodial rights upon a finding that they had not corrected the conditions of abuse and neglect and when less-restrictive dispositional alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition against the parents, petitioners herein, alleging that the father abused drugs intravenously in the home and that the mother admitted that she was aware of his drug use. According to the petition, the children disclosed that the father's drug use caused him to become angry and yell and that the father would hit as means of disciplining them. The petition also alleged that petitioners had an extensive Child Protective Services ("CPS") history including an open case since December of 2018. The DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as T.T.-1 and T.T.-2 throughout this memorandum decision.

also alleged that a prior abuse and neglect petition was filed against the parents, although they ultimately were able to regain custody of the children.

At a hearing in September of 2019, petitioners announced their intention to stipulate to the allegations against them. The circuit court then accepted the mother's stipulation to neglect by virtue of suspicion that the father abused drugs and accepted the father's stipulation to his drug use in the home. The circuit court also granted petitioners post-adjudicatory improvement periods. Although the circuit court granted the DHHR legal custody of the children, it permitted the mother to have physical custody with the additional requirement that the father not be permitted around them.

At a hearing in December of 2019, the circuit court found that the father had not yet enrolled in inpatient substance abuse treatment as directed and had failed to submit to drug screens. It was also reported that the father continued to go to the mother's home while the children were present, despite the court's prohibition. The court permitted the mother to retain physical custody of the children with ongoing services and explicitly ordered the father to have no contact with the mother or the children until further order. The court also permitted petitioners' improvement periods to continue.

During a hearing in March of 2020, the guardian indicated that she discovered the father in the mother's home during an unscheduled home visit. The children disclosed to the guardian that the father had been in the home and also that a different man, the mother's boyfriend, engaged in domestic violence with the mother the night before. According to the record, the court had previously directed the mother not to allow this other man around the children. As such, the guardian sought ratification of the children's emergency removal. Additionally, upon removal it was discovered that the mother was not properly administering the children's medications and that the children had in excess of twenty unexcused absences from school. The court ratified the children's emergency removal, noted that petitioners' improvement periods had expired, and set the matter for disposition.

The circuit court held a dispositional hearing in September of 2020, during which both the DHHR and the guardian sought termination of petitioners' parental rights. Based on testimony from DHHR personnel, the court found that the father was "noncompliant through the entirety of his improvement period." According to the witnesses, the father did not participate in the development of a case plan, submit to drug screens, comply with his parental fitness evaluation, and had no proof of housing or employment. A witness further testified that the father did not attend supervised visitation with the children, and, because he did not participate in the development of the case plan, the father was unable to complete parenting or adult life skills services. The court further noted that there was conflicting evidence about the father's participation in a Suboxone program, as a DHHR worker testified that the father was "somewhat compliant" with that program. The father's substance abuse counselor testified to the father's compliance with treatment, but also confirmed that the father tested positive on at least one drug screen within a few months of the dispositional hearing.

As for the mother, the court found that she was, at times, compliant with her case plan, but that she failed to make substantive changes and exhibited poor decision making, such as allowing

the father to be around the children. According to one DHHR worker, after the children were removed from the mother because she permitted the father to have continued contact with them, she appeared for a supervised visit later in the proceedings with the father. In fact, the worker indicated that the mother even arrived at the dispositional hearing with the father, evidencing their continued regular contact. The court also highlighted other poor decisions the mother made, such as allowing her boyfriend, a felon, in the home. The DHHR worker testified that without knowing much about the boyfriend, the mother allowed him to live in the home after which he became violent in the children's presence. Even after the DHHR instructed the mother that her boyfriend could not remain in the home, the mother allowed him to stay there. The circuit court also identified the mother's issues with permitting the children to become truant and failing to administer their medications. A DHHR worker testified that one child suffered from a condition that could result in seizures and required administration of medication and increased medical appointments, while the other children also took medications and had mental health issues that required management. According to the worker, even though the mother "tries very hard . . . she[ was] not consistently doing what needs to be done to maintain the children." The worker indicated that the situation with the children's medications was "one of the scariest things that happened" because all of the children require medication and "they were not in the proper bottles, the count was not as it should be." This led to serious concerns about the children's medication when they were moved to foster care. Because petitioner had issues refilling the medications and failed to administer them properly, the children's behavior worsened. The DHHR worker also testified that she would often instruct the mother as to an appropriate behavior, but the mother would fail to comply with the instruction. One of the mother's other service providers also testified that, despite the fact that the provider went above and beyond in the level of services she provided, the mother simply failed to improve to the point that she could safely care for the children. Based on the foregoing, the court found that petitioners could not appropriately parent the children. As such, the court terminated petitioners' parental, guardianship, and custodial rights to the children.[2] It is from the dispositional order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The permanency plan for the children is adoption together in a relative's home.

On appeal, petitioners first argue that the circuit court erred in finding that they had not remedied the conditions of abuse and neglect at issue. Succinctly, the mother asserts that she complied with all aspects of her improvement period and the father asserts that he attended substance abuse treatment that remedied his drug abuse. We find, however, that these arguments are an oversimplification of the evidence and do not entitle petitioners to relief.

While it is true that a DHHR worker and a service provider testified to the mother's compliance with services below, both witnesses nonetheless indicated that the mother failed to incorporate what she learned in those services such that she could safely and appropriately care for the children. As set forth above, the circuit court heard evidence about the mother repeatedly making poor decisions throughout the entirety of the proceedings, including her refusal to obey direction related to the individuals she permitted in her home. Despite the fact that she knew the father was a danger to the children and the circuit court's prohibition against contact between them, the mother allowed the father to be in the home with the children and continued having contact with him up through the dispositional hearing. The mother also allowed a convicted felon she only recently met to move into her home, which resulted in this individual perpetrating domestic violence in the children's presence. The witnesses further addressed the mother's inability to appropriately administer the children's many medications, which resulted in the child having behavioral issues. As a result, the witnesses testified that they could not recommend that petitioner regain custody of the children. While the mother's participation in services is commendable,

> [w]e have long recognized that "it is possible for an individual to show 'compliance with specific aspects of the case plan'" while failing "to improve . . . [t]he overall attitude and approach to parenting." *W. Va. Dept. of Human Servs. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990).

*State ex rel. W. Va. Dep't of Health and Human Res. v. Dyer*, 242 W. Va. 505, 519, 836 S.E.2d 472, 486 (2019). The mother's argument on appeal ignores the reality that compliance alone was insufficient to remedy conditions of abuse and neglect present in this case. According to the record, the issues that precluded the mother from having custody of her children continued throughout the proceedings unabated.

As for the father, he similarly fails to recognize the reality of the evidence at disposition. While it is true that he introduced evidence of his compliance with a substance abuse treatment program, he ignores the fact that a DHHR worker testified that he was entirely noncompliant with the services offered. Not only did the father fail to participate in the services designed to remedy the conditions of abuse and neglect, he failed to take the meager step of participating in the creation of the case plan designed to establish the steps necessary to regain custody of the children. As the service provider indicated, petitioner's refusal to participate with the DHHR resulted in his failure to visit the children during the proceedings. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). That the father refused to take the basic step of complying with the DHHR in an effort to see the children during the proceedings is telling. The father also

chooses to highlight his extended participation in a treatment program while ignoring the fact that he had at least one positive drug screen while in treatment. In short, the evidence shows that the father totally disregarded the DHHR and his required participation in services in favor of participating in a treatment program during which he tested positive for drugs. As such, it cannot be said that the father remedied the conditions of abuse and neglect at issue. As such, petitioners are not entitled to relief in regard to their argument that the court erred in finding that they had not remedied the conditions of abuse and neglect at issue.

Petitioners next argue that the circuit court erred in terminating their parental, custodial, and guardianship rights because less-restrictive dispositional alternatives existed. However, the same evidence above supports the circuit court's findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of those rights was necessary for the children's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given the evidence cited above regarding the ongoing nature of the conditions that gave rise to the petition's filing, it is clear the circuit court did not err in making these findings. Further, under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental and custodial rights upon these findings. As this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

On appeal, petitioners argue that, given their substantial compliance in remedying the conditions of abuse and neglect, the DHHR could have implemented services in their home under a less-restrictive disposition in order to correct any lingering issues. Not only is this argument contradictory to the law cited above, it is predicated on petitioners' incorrect assertion that they corrected the issues that necessitated the petition's filing, which they did not. As we have explained, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). As noted above, the mother is to be commended for her compliance with the services offered and the father's extended participation in substance abuse treatment is notable. However, neither of these facts alone is sufficient to overcome the evidence that returning the children to either petitioners' care would have been against their best interests, given petitioners' inability to properly care for them.

5

More importantly, the circuit court specifically questioned a service provider as to whether the mother would be able to manage the children under a scenario in which "an in[-]home caretaker . . . would come in three or four hours every day to assist" the mother, which the witness confirmed would not be a viable situation. Indeed, the record shows that the parents received extensive services pursuant to the open CPS case prior to the filing of the petition and that those services were insufficient to prevent the children's removal. In short, petitioners already received the kind of services they suggest should have remained ongoing, to no avail. As we have held,

> [a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton